IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RONALD REID, | ) | |
| Plaintiff, | ) ) ) | Case No. 3:20-cv-00050 |
| v. | ) ) | Judge Trauger |
| WILLIAM LEE, et al., | ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT METRO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### SUMMARY

In 1991, Plaintiff Ronald Reid broke into a woman's home and raped her. (Am. Compl., Doc. No. 29 ¶ 16.) The following year, Plaintiff pleaded guilty to *Especially Aggravated Burglary* and *Rape*, in violation of Tennessee law. (*Id.* ¶ 19.) When he was released from prison in 1998, he was required to register as a sex offender under a 1994 state law. (*Id.* ¶¶ 14-15, 22, 29.) Plaintiff now brings suit against Metro, alleging that the municipality's enforcement of Tennessee's Sex Offender Registration and Monitoring Act ("SORA") against him constitutes a "policy" of enforcing a law that violates the *ex post facto* clause of the U.S. Constitution. (*Id.* ¶¶ 80, 82.)

Defendant the Metropolitan Government is entitled to judgment as a matter of law on Plaintiff's § 1983 claim against it because Plaintiff has not advanced sufficient evidence to show that Metro can be held liable under § 1983 for the enforcement of SORA against him.

### UNDISPUTED FACTS

Metro references and incorporates its contemporaneously filed Statement of Undisputed Material Facts as if set forth fully herein and directs the Court to its statement for a recitation of the undisputed facts.

# LEGAL ANALYSIS

I.   **Applicable Legal Standards.**

   A.   *Summary Judgment Standard.*

Summary judgment is intended to "isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The party seeking summary judgment bears the initial burden of demonstrating that an essential element of the non-moving party's case is lacking. *Celotex*, 477 U.S. at 323. When the moving party meets this burden, the burden then shifts to the non-moving party who must produce specific evidence to establish a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Although the Court must view all facts and inferences to be drawn in the light most favorable to the non-moving party, the non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. *S.E.C. v. Blavin*, 760 F.2d 706 (6th Cir. 1985); *Celotex*, 477 U.S. at 324.

Where, as here, the undisputed facts warrant summary judgment, justice is best served by entering summary judgment. For this reason, the United States Supreme Court has emphasized that summary judgment is a proper procedure to promote judicial economy and reduce litigation costs. *Celotex*, 477 U.S. at 327; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is "regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex*, 477 U.S. at 327.

### B. Section 1983 Municipal Liability.

Section 1983 will not support a claim against a municipality based upon a *respondeat superior* theory of liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Rather, a municipality may be held liable "only for the adoption of a 'policy or custom' that violates federally protected rights." *Schroder v. City of Fort Thomas*, 412 F.3d 724, 727 (6th Cir. 2005); *see also Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 819 (6th Cir. 2007). The custom or policy must be the "moving force" behind the constitutional violation, *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981); thus, the plaintiff needs to "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation omitted); *Amerson v. Waterford Twp.*, 562 F. App'x 484, 490 (6th Cir. 2014).

Plaintiffs may choose to proceed under a variety of *Monell* theories, "including, for example, that a county has a formal policy that is unconstitutional; that a high-level county official engaged in the unconstitutional act; that the county failed to adequately train the employees who engaged in the unconstitutional act; that the county had a custom of inaction toward the unconstitutional act; and that the county ratified the unconstitutional act by failing to adequately investigate it." *Woodall v. Wayne Cty., Michigan*, No. 20-1705, 2021 WL 5298537, at *6 (6th Cir. Nov. 15, 2021).

Furthermore, "the word 'policy' generally implies a course of action consciously chosen from among various alternatives." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Accordingly, "municipal liability under § 1983 attaches where . . . a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible

for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

II. **Plaintiff's Evidence Does Not Support a Finding of § 1983 Municipal Liability.**

Plaintiff's Complaint sets forth an "as applied" challenge to Tennessee's SORA. (Am. Compl., Doc. No. 29 ¶ 80 ("As applied to Plaintiff, Tennessee's SORA regime constitutes 'punishment' within the meaning of the *ex post facto* clause of Article I, § 10 of the U.S. Constitution.").) However, the distinction between facial and as-applied challenges "is not so well defined that it has some automatic effect or that it must always control the pleadings" in every case involving a constitutional challenge. *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 691 (6th Cir. 2015). Thus, Plaintiff's claim might also be viewed by the Court as a "limited facial"[1] challenge to the application of SORA against those "offenders whose qualifying sex offenses predate Tennessee's enactment of the SORA." (Doc. No. 29 ¶ 83; *see also* Memo. Op., Doc. No. 42 at 23 ("The constitutional violation that Reid has alleged is not enforcing the Act generally, but specifically enforcing the Act against an individual whose only qualifying crime or crimes were pre-1995.").)

Regardless, what is clear in this case is that Plaintiff is not bringing a "facial" challenge to SORA in its entirety. And no court, within this district or circuit-wide, has found Tennessee's SORA to be an unconstitutional *ex post facto* law on its face.[2] Plaintiff specifically challenges

---

[1] This district has also recently used the term "qualified facial challenge" to refer to a challenge reaching beyond the plaintiff's particular circumstances. *Doe #1 v. Lee*, 518 F. Supp. 3d 1157, 1180 (M.D. Tenn. 2021) (RICHARDSON, J.).

[2] "If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997).

Metro's "existing policy and custom of proactively enforcing the Act indiscriminately against all offenders, including ones whose actions took place before 1995." (Doc. No. 42 at 18).[3]

### A. Any "As-Applied" or "Limited Facial" Challenge by the Plaintiff Must Fail.

"In an as-applied challenge, the plaintiff contends that application of the statute in the *particular context* in which he has acted, or in which he proposes to act, would be unconstitutional. Therefore, the constitutional inquiry in an as-applied challenge is limited to the plaintiff's *particular situation*." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997) (cleaned up) (emphasis added).

On the other hand, in limited facial challenges, *i.e.*, "constitutional challenges reaching beyond the plaintiff's circumstances," a plaintiff must "satisfy the standards for a facial challenge to the extent of that reach." *Green Party*, 791 F.3d at 692 (cleaned up). Accordingly, a "plaintiff must establish that no set of circumstances exist under which [the statute] would be valid" to the limited extent alleged. *Id.* at 691.

Therefore, if Plaintiff's Complaint is construed as a limited facial challenge to SORA, Plaintiff must establish that no set of circumstances exist under which SORA could be validly enforced against any and all offenders, state-wide, whose qualifying sex offenses predate Tennessee's enactment of SORA. But Plaintiff has not advanced any evidence that would make such a showing. There are no expert reports; no state-wide charts, maps, or graphs; no empirical studies regarding the effectiveness of SORA; and no material facts to that extent. *See* Memo. Op.,

---

[3]   Here, Plaintiff proceeds under the first of the above enumerated *Monell* theories, *i.e.*, that Metro has a policy that is, itself, unconstitutional. This case is not about a failure to train, nor does Plaintiff allege Metro had a custom of inaction toward an unconstitutional act. If Plaintiff were to allege a theory of inaction, then "The evidence must show that the need to act is so obvious that [Metro's] 'conscious' decision not to act can be said to amount to a 'policy' of deliberate indifference to [Reid's] constitutional rights." *Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996). Plaintiff has not put forth any evidence which would suffice to meet this significant burden.

Doc. No. 42 at 37 ("The most significant deficiency in the factual record before the court is that Reid, unlike the plaintiffs in *Snyder*, has not provided empirical studies regarding the effectiveness of the Act."); c*f. Does #1-5 v. Snyder*, 834 F.3d 696, 702, 704, 705 (6th Cir. 2016); *Doe #1*, 518 F. Supp. 3d 1186, 1187.[4]

In fact, Plaintiff's evidence focuses solely on the Act's effect *on him*. Plaintiff attempts to rely on the analysis performed in *Snyder*, 834 F.3d 696 (6th Cir. 2016), as dispositive proof. But "it is the effect, not the form, of the law that determines whether it is *ex post facto*." *Weaver v. Graham*, 450 U.S. 24, 31 (1981). Therefore, the factual evidence in *Snyder* may not substitute for factual evidence regarding Tennessee's SORA in this case. Thus, a similarly thorough examination of the effects of SORA on individuals in Tennessee is required to find that any portion thereof is facially unconstitutional.

Further, it is not enough for Plaintiff to show that Metro's "policy has been to indiscriminately enforce Tennessee's SORA laws against all persons deemed under Tennessee law to be 'sexual offenders' and 'violent sexual offenders,' without excepting those persons whose offenses predated the passage of Tennessee's SORA laws." (Doc. No. 29 ¶ 42.) This is because "the Constitution's ban on Ex Post Facto laws does not bar *all* retroactive lawmaking, but only retroactive punishment…" *Snyder*, 834 F.3d at 699 (emphasis in original). "[S]tates are free to pass retroactive sex-offender registry laws and that those challenging an ostensibly non-punitive civil law must show by the 'clearest proof' that the statute in fact inflicts punishment." *Id.* at 705. Therefore, "a particular regime's constitutionally permissible retroactivity must be determined via

---

[4] *See also Lee*, 518 F. Supp. 3d at 1188 (M.D. Tenn. 2021) (RICHARDSON, J.) ("Indeed, although Plaintiffs ask the Court to find 'every retroactive application of SORA,' unconstitutional under the Ex Post Facto Clause - a finding that would be applicable statewide, to all counties - they provide the Court with maps only of Davidson County.") (internal citation omitted).

a situation-specific evaluation of its particular effects." *Doe v. Haslam*, 2017 WL 5187117 at 19 (M.D. Tenn. Nov. 9, 2017) (CRENSHAW, C.J.). This is Plaintiff's burden.

But Plaintiff has not engaged in a situation-specific evaluation of the particular effects of SORA on *all offenders*, state-wide, whose qualifying sex offenses predate the enactment of that statute. Therefore, if this Court reads Plaintiff's complaint as a limited facial challenge to SORA, then here is where the analysis must end. There is no genuine dispute as to any material fact, and Metro is entitled to judgment as a matter of law.

### B. Plaintiff Cannot Satisfy the *Vives* test Using a Limited Facial Challenge.

No matter the case (whether an as-applied or a facial challenge), this Court has endorsed the approach taken by the Second Circuit in *Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008), as the appropriate means of reviewing Plaintiff's claim. (Memo. Op., Doc. No. 42 at 22.) In *Vives*, the Second Circuit analyzed the application of a statute that was *facially* unconstitutional.[5] 524 F.3d at 348. There, the Second Circuit determined that a municipality may incur liability for the enforcement of a statute in an unconstitutional manner "(1) [if] the City had a meaningful choice as to whether it would enforce [the unconstitutional statute]; and (2) if so, [if] the City adopted a discrete policy to enforce [the unconstitutional statute] that represented a conscious choice by a municipal policymaker." *Id* at 353.

Here, in the event this Court reads Plaintiff's complaint as a limited facial challenge, he would first need to prove that Metro had a meaningful choice as to whether it would enforce SORA in an unconstitutional manner against offenders whose qualifying sex offenses predate Tennessee's

---

[5] Further, the *Vives* case is specifically about establishing a municipal policy, and the court was careful to limit its decision to that specific context. 524 F.3d at 353 n.5 ("In this case, the plaintiff does not argue that liability exists based on a City custom. Therefore, we have no occasion to consider the role of conscious decision making in a 'custom' case.") (cleaned up).

enactment of the Act. Note that, in *Vives*, it was undisputed that the underlying state statute was unconstitutional. 524 F.3d at 348. Therefore, as an important threshold element in the *Vives* test, Plaintiff must show that he has a viable challenge to the facial validity of the Act. Otherwise, Metro's choice could not be cast in the light of constitutional or unconstitutional. In sum, if Metro were choosing between two distinct but nevertheless constitutional choices, there would be no potential for a violation.

But here, Plaintiff has failed to prove this important threshold element. As described above, Plaintiff cannot advance any evidence which would show that the punitive effect of the retroactive application of SORA as to *all offenders* whose qualifying sex offenses predate Tennessee's enactment of the Act. Therefore, he cannot use a limited facial challenge as the threshold basis to prove that Metro had a choice whether to enforce SORA in an unconstitutional manner.

   **C.  Plaintiff Cannot Satisfy the Vives *test Using an As-Applied Challenge.***

If, however, Plaintiff is making an as-applied challenge, then the analysis is different. Because Plaintiff alleges municipal liability under the first of the above enumerated *Monell* theories, Plaintiff must establish that Metro's policy is, itself, unconstitutional. So, applying the *Vives* two-part test to this case, Plaintiff must prove that Metro had a meaningful choice as to whether it would enforce SORA *against him*, *individually*; and, if so, he must then prove that Metro adopted a discrete policy to enforce SORA *against him*, *individually*, that represented a conscious choice by a municipal policymaker.

Here, Plaintiff has failed to prove the second part of the *Vives* two-part test.[6] That is, Plaintiff cannot advance any evidence that would show that any policymaker at Metro made a

---

[6]  Plaintiff also fails to explain whether and how Metro had a choice to enforce SORA, an act which has never been found to be a facially unconstitutional *ex post facto* law (in whole or in part), against only a select group of individuals without violating the Equal Protection Clause.

conscious choice to affirmatively enforce SORA against *him, individually*. This would be a different case if our Plaintiff could show that SORA as a whole is facially unconstitutional (as was the case in *Vives*). In that event, a conscious choice on the part of Metro to enforce SORA at all could be held to satisfy the test (again, as in *Vives*). But Plaintiff has not alleged (much less shown) that the entire Act is unconstitutional. Rather, Plaintiff has only alleged that the enforcement of SORA against him specifically was the constitutionally invalid choice. So, he must show that Metro consciously made that choice.

In order to do this, Plaintiff must direct this Court to the *particular context* in which he has acted, and to his *particular situation*. *Voinovich*, 130 F.3d at 193 ("[T]he constitutional inquiry in an as-applied challenge is limited to the plaintiff's particular situation.") (cleaned up). It is not enough for Plaintiff to show that Metro had a general policy of providing no exceptions to enforcement for individuals like him because such a policy would not inherently violate the constitutional prohibition against *ex post facto* laws.[7] Plaintiff, then, must show that a municipal policymaker made a conscious choice not to provide *him (specifically)* with an exception to the enforcement of SORA. He has put forth no such material facts.

Additionally, "The word 'policy' generally implies a course of action consciously chosen from among various alternatives." *Vives*, 524 F.3d at 350 (cleaned up). Plaintiff has failed to show that a municipal policymaker was confronted with various alternatives regarding the enforcement of the Act against *him*, and that that policymaker consciously chose not to allow *him* an exception.

---

[7] See the analysis above discussing how the Constitution "does not bar *all* retroactive lawmaking, but only retroactive punishment…" *Snyder*, 834 F.3d at 699 (emphasis in original). Therefore, "a particular regime's constitutionally permissible retroactivity must be determined via a situation-specific evaluation of its particular effects." *Haslam*, 2017 WL 5187117 at 19.

This is what the *Vives* test requires. And it is here that Plaintiff falls short. There is no genuine dispute as to any material fact, and Metro is entitled to judgment as a matter of law.

### III.   Metro is Not Liable Under § 1983 for Enforcement of SORA Against Plaintiff.

Plaintiff alleges that the Metropolitan Nashville Police Department (the "MNPD") has a policy of enforcing Tennessee's SORA and that this policy resulted in injury to Plaintiff. (Am. Compl., Doc. No. 29 ¶¶ 82, 86.) Metro cannot be held liable under § 1983 for this claim, however, because the MNPD and its officers act as state agents when enforcing state law, and the enforcement of Tennessee's SORA is not "policymaking" for purposes of § 1983 liability.

#### A.   *The MNPD and Its Officers Act as State Agents When Enforcing State Law.*

The Sixth Circuit has consistently held that when a city or county official enforces state law, that official acts as an agent of the state. *See Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993) (holding that a city prosecutor "pursues her duties as a state agent when enforcing state law or policy."); *Cady v. Arenac Cty.*, 574 F.3d 334, 343 (6th Cir. 2009) (holding that a county prosecutor acts "as a state agent when prosecuting state criminal charges."); *Ermold v. Davis*, 936 F.3d 429, 435 (6th Cir. 2019) (holding that a county clerk acts on the state's behalf when issuing state marriage licenses); *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995 (6th Cir. 2019) (holding that a county sheriff acts for the state when enforcing bail amounts stipulated by state law). Moreover, Tennessee's SORA has not been found facially unconstitutional and thus remains valid state law.[8] *See, e.g.*, *Lee*, 518 F. Supp. 3d 1157 (M.D. Tenn. 2021) (declining to find Tennessee's SORA facially unconstitutional). Accordingly, when the MNPD and its officers enforce Tennessee's SORA, they act as agents of the state. Since suits against a state are not

---

[8]   Metro adopts and incorporates by reference, pursuant to Fed. R. Civ. P. 10(c), arguments contained in the State Defendants' motion for summary judgment.

cognizable under § 1983, *Pusey*, 11 F.3d at 658 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989)), Metro cannot be held liable under § 1983 for enforcing Tennessee's SORA.

### B. The MNPD's Enforcement of Tennessee's SORA Is Not "Policymaking."

The MNPD's practice of enforcing Tennessee's SORA is not "policymaking" for which Metro can be held liable under § 1983. Tennessee's SORA was not enacted by either the MNPD or Metro but was instead promulgated by the Tennessee General Assembly. The General Assembly is the law-making authority in the State of Tennessee. Tenn. Const. art. II, § 3 ("The Legislative authority of this State shall be vested in a General Assembly.").

Simply put, the existence of SORA, as passed by the Tennessee legislature, is the source of Plaintiff's alleged injuries. But "A municipality's enforcement of a state law does not constitute an actionable official policy." *Vasquez v. Foxx*, 895 F.3d 515, 519 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 797, 202 L. Ed. 2d 572 (2019); *see also Surplus Store & Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law.").

The Middle District for Alabama rejected a similar attempt to hold a municipality responsible for any purported constitutional infirmities in Alabama's Sex Offender Registry statute. In dismissing the City, the court noted that:

> Mr. McGuire presents no evidence indicating that a City of Montgomery official has final policy-making authority over the provisions of ASORCNA. Rather, the Alabama Legislature delegated the interstitial policy-making function of ASORCNA to the Director of the Department of Public Safety. Additionally, no evidence has been offered indicating that any City official has discretionary authority over the promulgation of rules associated with ASORCNA, or that any such rules have been promulgated by the City. Because there is no evidence that the City has "consciously chosen [the methods in which ASORCNA has been implemented] from among various alternatives," *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985), there has been no showing

that any of the alleged actions in this case were a result of a *city* custom or policy. Accordingly, the City of Montgomery is due to be dismissed.

*McGuire v. Strange,* 83 F. Supp. 3d 1231, 1242-43 (M.D. Ala. 2015) (emphasis in original).

Similarly here, there is no evidence in the record that Metro has policymaking authority over the State legislature or was in any way involved with the drafting or passage of the provisions of SORA that Plaintiff now challenges. Metro is sued solely because one detective enforced SORA against Plaintiff. Because enforcement of Tennessee's SORA by the MNPD is not "policymaking" for which Metro can be held liable under § 1983, Metro is entitled to summary judgment.[9]

## IV. Enforcement Against Plaintiff for His 2019 SORA Violation Was Not Discretionary.

In 2019, Plaintiff was charged and arrested for violating Tennessee's SORA when he attempted to enter a school.[10] (Elliott Dep. Ex. 9, Doc. No. 59-3, at 2.) Specifically, Plaintiff

---

[9] To the extent Plaintiff alleges that municipal liability is based on ratification of illegal action by a Metro official with final policymaking authority, this claim also fails. Nothing in the record reflects that anyone with policymaking authority directed the detectives to enforce SORA's restrictions against Plaintiff. Moreover, to the extent that Plaintiff's claim against Metro derives from any allegation of wrongdoing on the part of MNPD detectives simply in their capacity as Metro employees, a municipality cannot be held liable under § 1983 for its employees' acts under a *respondeat superior* theory. *Monell*, 436 U.S. at 690-91.

[10] The statute of limitations for a § 1983 claim in Tennessee is one year. TENN. CODE ANN. § 28-3-104(a); *see also Howell v. Farris*, 655 F. App'x 349, 351 (6th Cir. 2016) (citing *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000)). Therefore, any MNPD enforcement actions against him that occurred more than one year prior to January 17, 2020, which is the filing date of the complaint initiating this lawsuit, are untimely.

Furthermore, Plaintiff's allegations that MNPD Detective Elliott told him that he could not decorate his house for Halloween (Deposition of Ronald Reid, Doc. No. 59-1, 77:5-7) and that he could not take his daughter to gymnastics classes (*id.* 155:8-12) are insufficient to support Plaintiff's § 1983 claim because (1) these instances are alleged to have occurred beyond the statute of limitations (*id.* 79:4-7, 155:13-14) and (2) Plaintiff was not charged with violating SORA for either decorating his house or taking his daughter to gymnastics and thus did not suffer a constitutional injury (*id.* 205:6-9, 207:1-4).

To the extent Plaintiff alleges that any MNPD enforcement actions against him prior to January 17, 2020, are not time-barred because they constitute "continuing violations," this doctrine is rarely applied to § 1983 actions in the Sixth Circuit. *See, e.g.*, *Henley v. Tullahoma City Sch. Sys.*, 84 F. App'x 534, 539 (6th Cir. 2003) (stating that "This Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions" and

violated § 40-39-211(d)(1)(A) of Tennessee law, (*id.*), which provides that "No sexual offender . . . shall knowingly . . . Be upon or remain on the premises of any building or grounds of any public school, private or parochial school . . . when the offender has reason to believe children under eighteen (18) years of age are present," TENN. CODE ANN. § 40-39-211(d)(1)(A). Upon entering the school, Plaintiff committed a felony, and the statute required that Plaintiff serve a minimum sentence before he would be eligible for suspension of sentence, diversion, or probation. TENN. CODE ANN. § 40-39-211(f) ("A violation of this part is a Class E felony. No person violating this part shall be eligible for suspension of sentence, diversion or probation until the minimum sentence is served in its entirety."). Accordingly, the MNPD did not have a "meaningful choice" regarding whether to enforce this provision of Tennessee's SORA against Plaintiff because the law required that Plaintiff serve a minimum sentence. And without enforcement discretion, Metro did not make a "conscious choice" to enforce any unconstitutional prohibition. *Vives*, 524 F.3d at 352.

Furthermore, state law requires each county's principal conservator of the peace, which in Davidson County is the MNPD,[11] to "ferret out crimes" and to "apprehend and arrest criminals." TENN. CODE ANN. § 38-3-102(b) ("It *shall* be the duty of the sheriffs, in their respective counties, by themselves or deputies, to patrol the roads of the county, to ferret out crimes, to secure evidence

---

that "In a § 1983 case, discrete acts (as opposed to allegations of a hostile environment) are not actionable if time-barred, even when they are related to acts that are not time-barred") (cleaned up).

[11] Metropolitan Charter § 8.202 ("The department of the metropolitan police shall be responsible within the area of the metropolitan government for the preservation of the public peace, prevention and detection of crime, apprehension of criminals, protection of personal and property rights and enforcement of laws of the State of Tennessee and ordinances of the metropolitan government.").

of crimes, and to apprehend and arrest criminals.")[12] (emphasis added) Accordingly, the MNPD did not have enforcement discretion for Plaintiff's 2019 violation.

## CONCLUSION

For the foregoing reasons, Metro is entitled to judgment as a matter of law on Plaintiff's § 1983 claim against it because Plaintiff has not advanced sufficient evidence to show that Metro can be held liable under § 1983 for the enforcement of SORA against him.

Respectfully submitted,

/s/ J. Brooks Fox
J. Brooks Fox (#16096)
Michael R. Dohn (#37535)
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
brook.fox@nashville.gov
michael.dohn@nashville.gov
*Attorneys for Defendant Metro*

---

[12] Under state law, "The sheriff is the principal conservator of the peace in the sheriff's county." TENN. CODE ANN. § 38-3-102(a). As noted above, however, the MNPD is designated as the principal conservator of the peace in Davidson County, pursuant to Tenn. Code Ann. § 6-3701 *et seq.* and *Metro. Gov't of Nashville & Davidson Cty. v. Poe*, 383 S.W.2d 265 (1964). Moreover, the Tennessee legislature's use of the word "shall" dictates that these duties are mandatory. 67 C.J.S. OFFICERS § 338 ("In the construction of statutes addressed to public officials, the word 'shall' is generally considered as mandatory.") (footnote omitted); 73 AM. JUR. 2D STATUTES § 12 ("The word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation.").

## CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the foregoing has been served via CM/ECF to:

| | |
|---|---|
| Kyle F. Mothershead<br>2901 Dobbs Ave.<br>Nashville, TN 37211 | Miranda H. Jones<br>Robert W. Mitchell<br>Tennessee Attorney General's Office<br>P.O. Box 20207<br>Nashville, TN 37202-0207 |

on this 4th day of February 2022.

                              /s/ J. Brooks Fox
                              J. Brooks Fox