IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| RONALD REID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:20-cv-00050 |
| | ) | |
| WILLIAM LEE, Governor of the State | ) | District Judge Aleta A. Trauger |
| of Tennessee, in his official capacity; | ) | |
| DAVID B. RAUSCH, Director of the | ) | Magistrate Judge Holmes |
| Tennessee Bureau of Investigation, in his | ) | |
| official capacity; and METROPOLITAN | ) | |
| GOVERNMENT OF NASHVILLE- | ) | |
| DAVIDSON COUNTY, TENNESSEE, | ) | |
| | ) | |
| Defendants. | ) | |

---

**RESPONSE OF STATE DEFENDANTS GOVERNOR LEE AND DIRECTOR RAUSH OPPOSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Defendants William Lee, Governor, and David B. Rausch, Director of the Tennessee Bureau of Investigation ("the State Defendants"), submit this Response opposing Plaintiff's Motion for Summary Judgment. Plaintiff is not entitled to summary judgment because he has not borne his heavy burden of proof to show that applying the Act to him violates the Ex Post Facto Clause.

**UNDISPUTED FACTS**

On February 4, 1992, Plaintiff, Ronald Reid, pled guilty to especially aggravated burglary and rape for offenses he committed in 1991. (Reid Dep. 9:1-8, 38:24-39:1.) He was sentenced to ten years in prison and was released from prison on October 9, 1998. (Reid Dep. 9: 9-15.) Upon

his release in October 1998, Plaintiff registered on Tennessee's sex offender registry, and he remained registered until September 2020. (Reid Dep. 69: 5-12.)[1]

Because of his offense, Plaintiff is classified as a violent sexual offender, requiring him to be registered for life and to report to law enforcement on a quarterly basis. *See* Tenn. Code Ann. §§ 40-39-204(b)(1), 40-39-207(g)(2); Reid Dep. 69:13-15. While Plaintiff was on the registry, the local registering authorities visited his residence periodically and searched it once. (Reid Dep. 82:3-86:22; Elliott Dep. 129:15-130:11.) These visits and search were the result of the policies of the registering agency, Defendant Metropolitan Government of Nashville, and not a requirement imposed by the Act. (Elliott Dep. 62:2-63:18; Metro Gov't 30(b)(6) Dep. 15:17-17:3; 41:24-52:19, 77:15-81:22; Exhibit 8 to Metro Gov't 30(b)(6) Dep.)

**ARGUMENT**

Plaintiff is not entitled to judgment as a matter of law because he has not carried his burden of proof to show that applying the Act to him amounts to retroactive punishment and therefore violates the Ex Post Facto Clause.

Under *Seling v. Young*, 531 U.S. 250, 261 (2001), courts use a two-part test to determine if a law inflicts retroactive punishment: First, a court must consider whether the legislature intended to establish civil proceedings. *Id.* If so, then courts must accept the legislature's intention and turn to the second part—whether challenging party has provided the "clearest proof," "by reference to a variety of factors, 'considered in relation to the statute on its face,'" that a statute is punitive in effect. *Id.* at 261-62 (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)).

---

[1] Plaintiff was removed from the registry in September 2020 by virtue of the preliminary injunction issued by this Court in August 2020.

Facts about individualized effects are not a proper basis for finding an ex post facto violation. *See Seling*, 531 U.S. at 262 ("[T]his Court expressly disapproved of evaluating the civil nature of an Act by reference to the effect that Act has on a single individual."); *Does #1-9 v. Lee*, No. 3:21-CV-00590, 2021 WL 5761039, at *3 (M.D. Tenn. Dec. 3, 2021). Such facts may, however, serve to illustrate how a law is applied. *See Does #1-5 v. Snyder*, 834 F.3d 696, 702-06 (6th Cir. 2016) (considering facts about individual offenders as illustrative but relying on facts about the general effect of a law when determining whether it violated the Ex Post Facto Clause).

On this second part of the intent-effects analysis, courts consider the following factors:

(1) Does the law inflict what has been regarded in our history and traditions as punishment?
(2) Does it impose an affirmative disability or restraint?
(3) Does it promote the traditional aims of punishment?
(4) Does it have a rational connection to a non-punitive purpose?
(5) Is it excessive with respect to this purpose?

*Snyder*, 834 F.3d at 701 (citing *Smith v. Doe*, 538 U.S. 84, 97 (2003)). "This is a challenging standard for plaintiffs." *Hope v. Commissioner of Indiana Dept. of Correction*, 9 F.4th 513, 530 (7th Cir. 2021) (en banc).

### I. Defendants Have Met the First Part of the *Seling* Test.

Under the first part of the intent-effects analysis, the Act is clear that the Tennessee legislature meant to establish a civil proceeding when it enacted the Act. *See* Tenn. Code Ann. § 40-39-201(b)(8) ("The general assembly also declares, however, that in making information about certain offenders available to the public, the general assembly does not intend that the information be used to inflict retribution or additional punishment on those offenders."); *see also Jackson v. Rausch*, No. 3:19-CV-377, 2021 WL 4302769, at *5 (E.D. Tenn. Sept. 21, 2021) ("The plain language of this statute expresses a nonpunitive intent to protect the public." (quoting *Ward v. State*, 315 S.W.3d 461, 470 (Tenn. 2010))). Plaintiff does not contend otherwise. (D.E. 64,

PageID# 879-83.) Defendants have thus satisfied the first part of the *Seling* test, and the burden is on Plaintiff on the second part to demonstrate the Act is punitive in effect. *See Seling*, 531 U.S. at 261-62.

## II.     Plaintiff Has Not Shown by the "Clearest Proof" that the Act Is Punitive in Effect.

Plaintiff contends that the Act has an unconstitutionally punitive effect as applied to him. (D.E. 64, PageID# 883.) Plaintiff relies heavily for this contention on the Sixth Circuit decision in *Snyder*, 834 F.3d 696 (D.E. 64, PageID# 879-80.) The record in this case differs from *Snyder*, and because the ex post facto analysis is, in part, "fact-intensive," the record in this case alone should be determinative. *Reid v. Lee*, 476 F. Supp. 3d, 684, 706-07 (M.D. Tenn. 2020*); see also Hope*, 9 F.4th at 534 ("The plaintiffs have not carried their heavy burden of proving that SORA is so punitive in effect as to override the Indiana legislature's intent to enact a civil law."). Based on the record in this case, Plaintiff has failed to show the Act meets any of the five factors enumerated in *Snyder* that courts consider when determining whether a law is punitive in effect. Therefore, Plaintiff's ex post facto claim fails.

### A.     The Act does not inflict what has historically been regarded as punishment.

**1. Banishment.** The Act's restrictions neither exclude offenders from society nor deport them from the State. The Act curtails residence and employment only in specific locations within the State. Tenn. Code Ann. § 40-39-211(a)(1) (restricting sexual offenders from knowingly living or accepting employment within one thousand feet of a protected area). And the Act prevents sexual offenders from visiting or approaching certain protected areas when children are present. Tenn. Code Ann. § 40-39-211(d)(1). It neither prohibits offenders from living in the State nor from living in any particular county in the State. Nor does the Act prohibit offenders from engaging with the community. The Act also allows offenders to maintain their residence and

4

employment, even if subsequent changes in the use of surrounding property would normally prohibit the offender from establishing a residence or employment at that location. Tenn. Code Ann. § 40-39-211(e). Thus, restrictions in the Act do not amount to banishment.

Nor do the facts in the record show that, in effect, the Act expels sexual offenders from the socio-political community of the State. The record lacks sufficient evidence to support a finding that the Act subjects sexual offenders in Tennessee to banishment. *See Jackson*, 2021 WL 4302769, at *7 ("Plaintiff has not shown that the Act has placed restrictions equivalent to banishment as applied to him.").

Even when focusing only on the facts that relate to Plaintiff, which may be considered solely for illustrative purposes, *see Snyder*, 834 F.3d at 702-06, the record shows Plaintiff has not been banished from the State, cut off from society, or expelled from his home. Plaintiff has had housing the entire time he has been on the registry and there is no evidence the Act impaired his ability to find housing. (Reid Dep. 10:21-14:13; 203:9-17.) While Plaintiff argues that his presence on the registry resulted in him having to leave his church (D.E. 64, PageID# 884), but this was not a requirement of the Act itself—rather it was the result of a decision of the church. (Reid Dep. 40:23-44:4.) In addition, Plaintiff has chosen not to return to this church even after being removed from the registry. (Reid Dep. 34:4-24.) Plaintiff also argues that the restrictions in the Act prevented him from working in video production. (D.E. 64, PageID# 883-884.) But like with his former church, even though he is no longer on the registry Plaintiff has not returned to videography. (Reid Dep. Reid Dep. 34:4-24; 35:3-36:7; 63:23-65:11.) What is more, Plaintiff has maintained steady employment for the duration of his time on the registry, and while on the registry, started a successful business, Reid's Towing, which is his current place of employment.

5
Case 3:20-cv-00050   Document 73   Filed 02/25/22   Page 5 of 16 PageID #: 1289

(Reid Dep. 26:14-37:1; 54:7-57:3; 64:9-24.) His name being on the registry has not impacted this business. (Reid Dep. 37:4-6.)

Plaintiff argues that the Act has restricted the activities he can engage in with his children. (D.E. 64, PageID# 883.) However, while on the registry, Plaintiff has actively engaged in many activities with his children, including trick or treating at Halloween, regularly attending the movies, regularly going out to eat, riding bikes, taking walks, and visiting the Civil Rights Museum in Memphis. (Reid. Dep. 22:22-23:2; 77:13-25; 98:17-99:19; 117:15-118:1; 118:20-119:6; 119:7-15; 119:21-120:8; 142:10-143:11). Plaintiff built a basketball court in his backyard as well as a space to play football, and he plays with his children in these places. (Reid Dep. 22:6-21; 89:22-91:7.) Thus, the Act has not demonstrably impaired his relationship with his children.

For these reasons, the Act as written and the evidence in the record of the Act's effects do not show by the clearest proof that the Act's restrictions equate to banishment.

**2. Shaming.** The Act's publication of vital information to the public is distinct from the historic punishment of public shaming. There were colonial punishments intended "to inflict public disgrace" and make offenders "suffer permanent stigmas, which in effect cast the person out of the community." *Smith*, 538 U.S. at 97-98 (quotation marks and citations omitted). But here, every citizen who accesses the registry is informed that, by law, the information may not be used to inflict retribution on, harass, or threaten offenders. Tenn. Code Ann. § 40-39-201(8); Tenn. Bureau of Investigation, *Sex Offender Registry Search*, https://www.tn.gov/tbi/general-information/redirect-tennessee-sex-offender-registry-search/sex-offender-registry-search.html (last visited February 3, 2022). Instead of promoting "face-to-face shaming," the Act discourages confrontation and promotes public awareness. *Smith*, 538 U.S. at 98; *see Doe v. Settle*, No. 20-1951, 2022 WL 260866, at *13 (4th Cir. Jan. 28, 2022) (finding the publication of a sexual

offender's profile online did not resemble shaming because generally shaming "involved physical pain and direct confrontation with the community"). Any stigma resulting from publicly designating a person convicted of rape as a violent sexual offender "results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public." *Smith*, 538 U.S. at 98; *see id.* at 98-99 (stating that publication on the Internet "does not alter [the] conclusion" that "dissemination of truthful information in furtherance of a legitimate governmental objective" is not punishment); *see also Hope*, 9 F.4th at 531 (finding that applying "categorical labels" to offenders like "'sexually violent offender' or 'offender against children' . . . . falls short of public shaming" because these labels "transmit[] accurate information about the underlying conviction").

Nothing in the record shows that the Act publicly shames sexual offenders in general, or Plaintiff in particular. Indeed, there is no evidence in the record showing that the effect of the Act on sexual offenders in Tennessee resembles the traditional punishments of shaming. And, regarding Plaintiff, even though Plaintiff argued that he receives emails from "random third parties" alerting people that he is a registered sexual offender (D.E. 64, PageID# 884), he has not asserted that these emails are required by the Act—for good reason, the Act does not call for email notifications to be spontaneously sent to the general public. *See* Tenn. Code Ann. § 40-39-214. Because these emails are the result of third-party actions, these emails do not show *the Act* has a punitive shaming effect. Furthermore, when asked to provide such an email, Plaintiff submitted an email without any content, much less content shaming him and others for being sexual offenders. (Ex. 2, Pl. Doc. 0132-0133.) Likewise, Plaintiff points to the 2010 publication of his photo in "Just Busted" as evidence of the Act's effect on his relationships (D.E. 64, PageID# 884), but as Plaintiff acknowledges (*id.*) that publication was a consequence of his being arrested, not a

restriction imposed by the Act. Thus, the evidence does not show by the clearest proof that the Act sanctions and facilitates face-to-face confrontations between offenders and the public with the intent to humiliate offenders.

**3. Probation or parole.** The traditional punishments of probation and parole are different from the Act's reporting requirements in both character and effect. Historically, probation and parole have involved far more comprehensive governmental intrusions into a probationer's affairs than the Act's reporting requirements. Yet Tennessee's Act requires none of the traditional hallmarks of probation or parole. *Shaw v. Patton*, 823 F.3d 556, 564 (10th Cir. 2016); *see Smith*, 538 U.S. at 87 (noting that registrants, unlike probationers, have "no supervision" and "are not required to seek permission" before engaging in activities); Tenn. Code Ann. § 40-28-117(a)(1) (specifying that parolees "remain while thus on parole in the legal custody of the warden of the prison . . . until the expiration of parole").

The Act does not require offenders to be employed. It does not require consent of law enforcement as a condition precedent to offenders moving or changing employment. *See* Tenn. Code Ann. § 40-39-211 (restricting offenders from living or working in protected areas but not requiring prior approval of the housing or employment situation). It does not regulate the offenders' responsibility to their families. *Id.* It does not require monthly reports. Tenn. Code Ann. § 40-39-203 (requiring violent sexual offenders to report only on a quarterly basis or within a specified time if certain information in the offenders' profiles changes). It does not restrict who an offender may befriend or what an offender may imbibe. It does not require offenders to submit to searches of person or property based on a reasonable suspicion; it does not even contain the word "search." Tenn. Code Ann. §§ 40-39-201 to -118. It does not require random drug tests,

8
Case 3:20-cv-00050   Document 73   Filed 02/25/22   Page 8 of 16 PageID #: 1292

home visits, community service, medical or psychiatric treatment, transdermal monitoring devices, or restitution.

And while the Act is enforceable through criminal penalties, those penalties are a consequence distinct from a sexual offender's original offense—unlike the possibility that parole or probation may be revoked, which is tied to the underlying criminal punishment. *Smith*, 538 U.S. at 101-02 ("A sex offender who fails to comply with the reporting requirement may be subjected to criminal prosecution for that failure, but any prosecution [for violating a sex offender registry statute] is a proceeding separate from the individual's original offense."); *Hope*, 9 F.4th at 532; *Shaw*, 823 F.3d at 566. In short, the Act does not impose the typical supervisory conditions that permeate every aspect of a probationer's or parolee's life. The record lacks facts showing anything to the contrary.

For all these reasons, Plaintiff has not established by the clearest proof that the Act imposes what has been historically regarded as punishment.

### B. The Act does not impose an affirmative disability or restraint.

As to the second of the five ex post facto factors, the Act does not impose affirmative disabilities or restraints of a punitive nature. When weighing this factor in *Smith*, the Supreme Court found that the registration requirements in Alaska's sex offender act "make a valid regulatory program effective and do not impose punitive restraints in violation of the Ex Post Facto Clause." *Id*. at 102. Emphasizing that a statute's resemblance to imprisonment is particularly important, the Court observed:

> The Act imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint. The Act's obligations are less harsh than the sanctions of occupational debarment, which we have held to be nonpunitive. The Act does not restrain activities sex offenders may pursue but leaves them free to change jobs or residences.

9

*Id.* at 100 (citations omitted). So too here: the annual and quarterly registration requirements in Tennessee's Act are key to the efficacy of the regulatory scheme because they keep information in the registry up-to-date, and they do not resemble imprisonment. *See* Tenn. Code Ann. § 40-39-204.

Even onerous burdens—including fines, occupational disbarment, involuntary confinement, and denial of governmental benefits—will not transform a civil regulation into punishment. *See Hope*, 9 F.4th at 532-33 (collecting Supreme Court cases). The 1,000-foot restrictions imposed by Tennessee's Act are not physical restraints or obligations so onerous that they approach imprisonment. *See id.* (holding a similar 1,000-foot restriction did not impose an affirmative disability or restraint); *Vasquez v. Foxx*, 895 F.3d 515, 522 (7th Cir. 2018) (upholding similar 500-foot restrictions); *Shaw*, 823 F.3d at 568, 570-71 (upholding similar 2,000-foot restrictions).

The facts in the record do not show otherwise—there are not facts showing that the Act generally imposes affirmative disability or restraint on sexual offenders. This is a crucial shortcoming of Plaintiff's case. *See Smith*, 538 U.S. at 100 ("The record in this case contains no evidence that the Act has led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred through the use of routine background checks by employers and landlords."). And even regarding Plaintiff, the record is similarly unavailing. Plaintiff must register on a quarterly basis (Reid Dep. 69:9-72:24), but the Supreme Court has already found similar registration requirements not to be punitive. *Smith*, 538 U.S. at 100-02. And, when he was on the registry, the Act did not impact Plaintiff's business, Reid's Towing (Reid Dep. 37:4-6.) Nor is there evidence that the Act negatively impacted his ability to find housing. (Reid Dep. 10:21-14:13; 203:9-17). The evidence in the record does not show by the clearest proof

that the Act impacts Plaintiff or other offenders in Tennessee in a manner resembling imprisonment, and accordingly, the evidence does not show that the Act imposes an affirmative disability or restraint. *Hope*, 9 F.4th at 533 ("[I]t is sufficient to note that to the extent that SORA's obligations amount to restraints or disabilities, standing alone they are not sufficiently severe in view of Supreme Court precedent to make SORA punitive."). In the absence of such facts, Plaintiff has not carried his burden of "clearest proof." *Seling*, 531 U.S. at 261-62 (quoting *Hudson*, 522 U.S. at 100).

### C. The Act does not promote the traditional aims of punishment

With respect to the third factor, the Act is designed to promote the legislature's civil regulatory interest in public safety. The Tennessee General Assembly has articulated eight non-punitive purposes for the Act, including to protect the public, to enhance public scrutiny of the criminal and mental health systems, and to benefit the general welfare of Tennesseans. Tenn. Code Ann. § 40-39-201(b)(1)-(8). The obvious aim of the Act is therefore to promote public safety by protecting and informing Tennesseans. Tenn. Code Ann. § 40-39-201. While the Act may have a collateral deterrent effect on crime, such collateral effects will not render sex offender registration laws punitive. *Smith*, 538 U.S. at 102; *see also Snyder*, 834 F.3d at 704 (giving "this factor little weight" because of the overlap between civil and punitive purposes). The Act's collateral deterrent effects do not make it punitive, and Plaintiff has not presented evidence showing otherwise. In fact, although Plaintiff argues the Act "prevent[s] him from going to places where children might be found." (D.E. 64, PageID# 886), the record belies his assertion. (Reid Dep. 22:24-25:2; 136:24-137:03; 139:4-21; 142:13-143:10.)

### D. The Act is rationally connected to a non-punitive purpose.

With respect to the fourth factor, the Act is rationally related to the State's non-punitive interest in public safety. This factor is "[m]ost significant" to this Court's determination of whether the Act is punitive. *Smith*, 538 U.S. at 102 (quoting *United States v. Ursery*, 518 U.S. 267, 290 (1996)).[2] The Supreme Court has held that sex offender registration laws are rationally connected to the State's interest in public safety. *Smith*, 538 U.S. at 102-03. And multiple other courts have held that sex offender registration acts are rationally related to the governmental interest in public safety. *See*, *e.g.*, *Hope*, 9 F.4th at 533-34; *Shaw*, 823 F.3d at 573-75.

Tennessee's Act reflects, on its face, a rational connection to the Act's non-punitive purpose. The Tennessee General Assembly has found that violent sexual offenders "present an extreme threat to public safety" and that "[s]exual offenders pose a high risk of engaging in further offenses." Tenn. Code Ann. § 40-39-201(b)(1). "[P]rotection of the public from these offenders is of paramount public interest," and it is necessary that the public have information about offenders "to adequately protect themselves and their children from these persons." Tenn. Code Ann. § 40-39-201(b)(1) – (2). The Supreme Court, the Sixth Circuit, and other courts have recognized that it is a legislature's prerogative to conclude that sexual offenders pose a risk to public safety. *Smith*, 538 U.S. at 103; *Hope*, 9 F.4th at 534; *Shaw*, 823 F.3d at 575-77; *Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007) ("[O]ur role is not to invalidate the program if the Tennessee Legislature has not struck the perfect balance between the regulatory purpose of the

---

[2] This Court has previously assumed that the defending public official bears the burden of proof on this factor because the defending public official would bear the burden of proof in an as-applied First Amendment challenge. *Doe #1 v. Lee*, 518 F. Supp. 3d 1157, 1202 (M.D. Tenn. 2021). But due to the quasi-facial nature of an as-applied ex post facto challenge like this one, the party challenging the statute bears the burden of proof. *See Seling*, 531 U.S. at 261. This burden does not shift for factor four. *See id.*

program and its burdens on Tennessee citizens . . . ."); *State v. Petersen-Beard*, 377 P.3d 1127, 1139-40 (Kan. 2016).

Furthermore, "[a] statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." *Smith*, 538 U.S. at 103. Instead, there must be proof "that the Act's nonpunitive purpose is a 'sham or mere pretext.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 371 (1997) (Kennedy, J., concurring)). The record in this case contains no such evidence. Because Plaintiff has not demonstrated by "the clearest proof" that Tennessee's interest in public safety is a sham or pretext, this factor must also be counted against him. *See Seling*, 531 U.S. at 261.

### E. The Act Is Not Excessive with respect to its non-punitive purpose.

The Act imposes reasonable reporting requirements, offender classifications, and protected-area restrictions to serve the legislature's interest in public safety; it is not excessive in relation to its non-punitive purpose. "The excessiveness inquiry of our *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Smith*, 538 U.S. at 105.

As discussed in the State Defendants' memorandum in support of their motion for summary judgment (D.E. 66, PageID# 914-917), there are staggering economic and noneconomic costs to sexual offenses. Because the State has an interest in mitigating these economic and noneconomic costs, the Act's provisions pertaining to housing and employment—as well as its provisions designed to maintain distance between offenders and certain protected public areas—are reasonable. The record does not show the effect of the Act on sexual offenders is excessive with respect to its non-punitive purpose.

Considering all five factors, then, Plaintiff has failed to carry his burden of proof. The record in this case does not show that the Act is so punitive in effect as to negate the legislature's intent to enact a civil law, compelling the conclusion that the Act does not impose retroactive punishment.

### III. Objections to Plaintiff's Evidence

The State Defendants object to Plaintiff's reliance on his deposition testimony that he receives "sex offender alert" emails. Twice in his Memorandum in Support of his Motion for Summary Judgement Plaintiff asserts that he "has repeatedly been copied on 'sex offender alert' emails addressed to families living his neighborhood, labeling [Plaintiff] as a 'violent sex offender' and alerting the community to his presence." (D.E. 64, PageID# 875, 874.) Plaintiff's fact #44 also relies on these emails. (D.E. 63, PageID# 854.) In support of his assertion, Plaintiff points to his deposition testimony. (*Id.*) Yet when copies of these emails were requested, Plaintiff provided a "sample email" that is mostly blank, and contains no reference to Mr. Reid, his community, or sex offenders generally, other than that the sender appears to be "Sex Offender Alerts, Gangman@yourexotictravelguide.com." (Ex. 1, Supp. Resp. RFPs; Ex. 2 Pl. Doc. No. 0132-0133.)

Under Fed. R. Evid. 1002,[3] the general rule is that a written document must be produced in order to establish the content within that written document. And pursuant to Federal Rule of Civil Procedure 56(c)(2), "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible evidence." *See also Mangrum v. Repp.*, 674 Fed.Appx. 531, 536-37 (6th Cir. 2017).

---

[3] "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002.

This is the case here: the produced document does not corroborate Mr. Reid's testimony, and Mr. Reid's testimony is thus inadmissible to prove the contents of the email(s). Fed. R. Evid. 1002. There is, consequently, no admissible evidence that Mr. Reid received the emails in question.

## CONCLUSION

For these reasons, Plaintiff's motion for summary judgment should be denied.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

s/ Rob Mitchell
ROB MITCHELL (32266)
Senior Assistant Attorney General

s/ Miranda Jones
MIRANDA JONES (36070)
Assistant Attorney General

Law Enforcement and
Special Prosecutions
Division
Office of the Tennessee
Attorney General and
Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Off. (615) 532-6023
Fax (615) 532-4892
robert.mitchell@ag.tn.gov
miranda.jones@ag.tn.gov
*Counsel for Defendants Lee and Rausch*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been filed and served by the Court's electronic filing system upon:

Kyle Mothershead
2901 Dobbs Ave.
Nashville, TN 37211
T: (615) 982-8002
F: (615) 229-6387
kyle@relentlesslaw.com
*Counsel for Plaintiff*

J. Brooks Fox
Michael R. Dohn
Assistant Metropolitan Attorneys
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
brook.fox@nashville.gov
michael.dohn@nashville.gov
*Counsel for Metropolitan Government of Nashville/Davidson County, Tennessee*

On this the 25th day of February, 2022.

                                        s/ Rob Mitchell
                                        ROB MITCHELL

16
Case 3:20-cv-00050   Document 73   Filed 02/25/22   Page 16 of 16 PageID #: 1300