| | | |
|---|---|---|
| RONALD REID, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:20-cv-00050 |
| | ) | |
| WILLIAM LEE, Governor of the State | ) | District Judge Aleta A. Trauger |
| of Tennessee, in his official capacity; | ) | |
| DAVID B. RAUSCH, Director of the | ) | Magistrate Judge Holmes |
| Tennessee Bureau of Investigation, in his | ) | |
| official capacity; and METROPOLITAN | ) | |
| GOVERNMENT OF NASHVILLE- | ) | |
| DAVIDSON COUNTY, TENNESSEE, | ) | |
| | ) | |
|     Defendants. | ) | |

---

**STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS WILLIAM LEE AND DAVID RAUSCH**

---

Pursuant to LR56.01(c), Defendants William Lee, Governor, and David B. Rausch, Defendants William Lee, Governor, and David B. Rausch, Director of the Tennessee Bureau of Investigation, submit the following response to Plaintiff's statement of material facts:

1) In 1991, at the age of 16, Mr. Reid raped an adult woman in Shelby County, Tennessee.

   (Ex. A, Reid Depo, 9:01 – 9:17).

**RESPONSE: Undisputed for purposes of this motion.**

1

2) Mr. Reid's case was prosecuted in adult criminal court, and Mr. Reid was convicted of Aggravated Rape and sentenced to ten years in prison. *Id.*

**RESPONSE: Disputed. Plaintiff was also convicted of especially aggravated burglary. (Reid Dep. 9:01-04.) Otherwise undisputed for purposes of this motion.**

3) At the time, Tennessee had no sex offender registration or restriction laws whatsoever. *See Doe v. Haslam*, 2017 U.S. Dist. LEXIS 186130, at *1 – 12 (M.D. Tenn. 2017) (recounting the history of Tennessee's SORA regime).

**RESPONSE: Undisputed for purposes of this motion.**

4) In 1994, while Mr. Reid was serving his sentence, Tennessee enacted its first, very limited SORA regime, requiring that offenders be entered into a private law enforcement database. *Id.*

**RESPONSE: Undisputed for purposes of this motion.**

5) Mr. Reid served his time, got married while he was incarcerated, and was released in 1998 without any parole or other supervision. (Ex. A, <u>Reid Depo</u>, 9:01 – 9:17, 10:21 – 13:16, 15:15 – 16:10, 17:12 – 19:07).

**RESPONSE: Undisputed for purposes of this motion.**

6) Mr. Reid moved in with his wife and her son, helped raise his stepson, and a few years later had a son of his own with his wife. *Id.*

2

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

7) After his release, Mr. Reid submitted his sex offender registry paperwork directly to the TBI, as required by then-existing law. (Ex. B, <u>Reid TBI Registration</u>).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

8) However, the very limited sex offender registry in effect in from 1998 – 2003 interfered only minimally with Mr. Reid's life, and he was able to live a relatively normal life. (Ex. A, <u>Reid Depo</u>, 9:01 – 9:17, 10:21 – 13:16, 15:15 – 16:10, 17:12 – 19:07).

**RESPONSE: Undisputed for purposes of this motion.**

9) Mr. Reid was very involved with his stepson, regularly taking him to the park to play basketball and taking him on trips to California to see Mr. Reid's extended family. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

10) After his 1998 release, Mr. Reid got a part-time job at Auto Express selling cars, as well as a job at a grill factory. *Id.* at 26:14 – 32:14.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

3

11) Mr. Reid later left the grill factory to work at a packaging company, and then in 2001 left the packaging company to work at the Matthew Walker clinic, as a Health Educator giving presentations on heart health and diabetes to disadvantaged communities. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

12) Mr. Reid held the Matthew Walker job from 2001 – 2009, still working part-time at Auto Express, until the grant that had funded the Matthew Walker job ran out. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

13) After the Matthew Walker job ended Mr. Reid went full time at Auto Express, eventually becoming the general manager. *Id.*

**RESPONSE: Undisputed for purposes of this motion.**

14) In 1998, after his release, Mr. Reid joined Mt. Zion Baptist Church. *Id.* at 32:24 – 34:24.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

15) Mr. Reid told the church leadership that he had just gotten out of prison, explained what he had been incarcerated for, and asked them to pray for him. *Id.* at 41:04 – 41:22.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

16) For over twenty years, Mr. Reid would attend Sunday services as well as weekly Wednesday Bible study sessions. *Id.* at 82, 175 – 176.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

17) Mr. Reid worked for Mt. Zion for several years as an usher, and then starting in 2005 as a member of the video production team. *Id.* at 32:24 – 34:24.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

18) Over the years, Mr. Reid developed a true passion for video production, ultimately becoming Mt. Zion's video productions director. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

19) Mr. Reid became close with many of the church leaders and parishioners over the years, earning their trust and respect. *Id.* at 160 – 176.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

20) In 2003 and 2004, Tennessee passed draconian new sex offender laws – hereafter referred to as "SORA" – that severely restricted the lives of convicted sex offenders, including past

offenders like Mr. Reid.  *See Doe v. Haslam*, 2017 U.S. Dist. LEXIS 186130, at *1 – 12 (M.D. Tenn. 2017).

**RESPONSE:  Disputed.  Nothing in the cited order denying a motion to dismiss uses the word "draconian."  *See* Doe v. Haslam, No. 3:16-CV-02862, 2017 WL 5187117, at *1 (M.D. Tenn. Nov. 9, 2017). Nor does it demonstrate that SORA "severely restricted the lives of convicted sex offenders." *See id*.  In addition, pursuant to LR56.01(b), this is a legal allegation, not a fact.  Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

21) The new laws impacted Mr. Reid's life severely, especially in the realm of parenting.  Mr. Reid had to report to the Metro Nashville Police Department's ("MNPD") SORA office quarterly to register and pay a $150 fee every year, on pain of arrest and prosecution.  (ECF 6-3, Reid Decl, ¶¶ 2 – 4).

**RESPONSE:  First sentence is disputed. Plaintiff's life has not been severely impacted, including "the realm of parenting."  (Reid Dep. 10:21-14:13; 22:6-23:02; 26:14-37:1; 54:7-57:3; 64:9-24; 77:13-25; 89:22-91:07; 98:17-99:19; 117:15-118:1; 118:20-119:6; 119:7-15; 119:21-120:8; 142:10-143:11; 203:9-17.) The second sentence is undisputed for purposes of this motion.**

22) Mr. Reid was required to notify MNPD within ten days if he moved, update MNPD with any job changes, and update MNPD with the identifying information for any vehicle that he possessed.  (Ex. A, Reid Depo, 52 – 53, 91 – 97).

**RESPONSE: Undisputed for purposes of this motion.**

6

23) Whereas Mr. Reid had been able to take his stepson to the park to play basketball and do other things with him before the 2003 – 2004 SORA enactments, SORA prohibited Mr. Reid from giving the same level of parenting to his own son. *Id.* at 9, 17 – 18; T.C.A. § 40-39-211.

**RESPONSE: Disputed. (Reid Depo. 20:7-8; 22:10-11.) In addition, pursuant to LR56.01(b), this is a legal allegation, not a fact. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

24) Indeed, SORA prohibited Mr. Reid from taking his children anywhere where other children were likely to be found. *Id.*; (Ex. A, Reid Depo, 21 – 26, 57:08 – 57:11, 136 – 146, 154 – 156, 160, 204 – 209).

**RESPONSE: Disputed. (Reid Dep., 22:24-25:2; 136:24-137:03; 139:4-21; 142:13-143:10.) In addition, pursuant to LR56.01(b), this is a legal allegation, not a fact. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

25) Thus, Mr. Reid could not take his children to the park, to a playground, to a public sports event, to the beach, to the pool, to the toy store, or to anywhere else where children go. *Id.*

**RESPONSE: Disputed. (Reid Dep. 22:24-25:2; 136:24-137:03; 139:4-21; 142:13-143:10.) In addition, pursuant to LR56.01(b), this is a legal allegation, not a fact. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

26) In 2010, Mr. Reid divorced his first wife. *Id.* at 15:20 – 17:08.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**


27) In 2012, Mr. Reid married his second wife. *Id.* at 16:25 – 20:22.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**


28) Mr. Reid had a daughter with his second wife in 2013, and a son with her in 2019. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**


29) Mr. Reid and his daughter are very close, and he has consistently spent as much time with her as he could. *Id.* at 21:06 – 23:04.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**


30) However, the SORA restrictions severely impacted the ways in which they could spend time together. *Id.*

**RESPONSE: Disputed. (Reid Dep. 22:24-25:2; 136:24-137:03; 139:4-21; 142:13-143:10.) In addition, pursuant to LR56.01(b), this is a legal allegation, not a fact. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

31) Because Mr. Reid could not take his daughter anywhere designed for children, he came up with alternatives at home – the built a movie studio for them to watch movies in, he got her a trampoline for the backyard, and he got her three dogs. *Id.* at 22.

**RESPONSE: Disputed that "Mr. Reid could not take his daughter anywhere designed for children". (Reid Dep. 22:24-25:2; 136:24-137:03; 139:4-21; 142:13-143:10.) Otherwise undisputed for purposes of this motion. In addition, pursuant to LR56.01(b), this is a legal allegation, not a fact. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

32) But, the restrictions still bit hard. *Id.* at 21:22 – 21:25.

**RESPONSE: Disputed. (Reid Dep. 22:24-25:2; 136:24-137:03; 139:4-21; 142:13-143:10.) Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

33) When Mr. Reid's daughter enrolled in gymnastics class, SORA prohibited Mr. Reid from taking her there. *Id.* at 154 – 156.

**RESPONSE: Disputed. (Reid Dep. 154:22-156:8.) In addition, pursuant to LR56.01(b), this is a legal allegation, not a fact. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

34) While SORA did not explicitly prohibit Mr. Reid from dropping off and picking up his daughter from school, it did prohibit him from attending school events without the principal's explicit permission. *Id.* at 23 – 25.

**RESPONSE: Undisputed for purposes of this motion. In addition, pursuant to LR56.01(b), this is a legal allegation, not a fact. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

35) Mr. Reid tried dropping his daughter off at school a couple times, but stopped after the principal made a harsh statement toward him about being a sex offender. *Id.* at 23 – 24.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

36) In "the hardest moment of [Mr. Reid's] whole entire life," Reid asked for permission to attend his daughter's kindergarten graduation – and was denied. *Id.* at 24 – 26.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

37) After he missed the graduation, his daughter told him she felt like she did not have a daddy that day. *Id.* at 209.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

38) Because of SORA, Mr. Reid could not help pass out candy at Halloween, one of his daughter's favorite holidays. *Id.* at 76 – 78.

10

**RESPONSE: Disputed. (Reid Dep. 77:8-21; 79:9-21.) In addition, pursuant to LR56.01(b), this is a legal allegation, not a fact. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

39) Instead, Mr. Reid had to hide inside the house watching TV while his daughter decorated and passed out candy on her own. *Id.*

**RESPONSE: Disputed. (Reid Dep. 77:8-21; 79:9-21.) In addition, pursuant to LR56.01(b), this is a legal allegation, not a fact. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

40) One year, MNPD informed Mr. Reid that he could not have Halloween decorations at his house at all. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

41) Naturally, the one who was hurt the most by this was Mr. Reid's daughter. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

42) In 2010, MNPD arrested Mr. Reid and charged him with a felony SORA violation because he spent a short time staying with a friend while he and his first wife were having marital problems. (Ex. A, Reid Depo, 91 – 97; Ex. C, Crim Case Docs, at 4).

11

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

43) In the wake of this arrest, Mr. Reid's name and picture were published in the sex offender section of "Just Busted" magazine, which was seen by numerous people in his community. (Ex. A, <u>Reid Depo</u>, at 120 – 121).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

44) Over the years, Mr. Reid has repeatedly been copied on "sex offender alert" emails addressed to families living in his neighborhood, labeling Mr. Reid as a "violent sex offender." (ECF 6-3, <u>Reid Decl</u>., ¶ 7; Ex. A, <u>Reid Depo</u>, at 147 – 149).

**RESPONSE: Disputed. Pl. Doc. No. 0132-0133. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

45) For years, Mr. Reid had worked toward the dream of owning his own video production company. (Ex. A, <u>Reid Depo</u>, at 210 – 213).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

46) This dream began in the year 2005, when Mr. Reid took a video production class at Mt. Zion. *Id.* at 15.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

47) Mr. Reid started working with Mt. Zion's video production team, initially running a camera and then, after several years of developing his skills and earning credibility, as the production team's director. *Id.* at 32 – 34.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

48) Mt. Zion paid Mr. Reid as a contract worker for his video production work, typically about $8,000 per year. (*Id.* at 32 – 34; Ex. D, <u>1099 Samples</u>).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

49) From around 2014 or so onward, Mr. Reid also did contract work for a company called "White House Productions," running the camera and directing for them. (Ex. A, <u>Reid Depo</u>, at 34 – 36).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

50) By April 2019, Mr. Reid had accumulated about $10,000 worth of video production equipment. *Id.* at 40. He was ready to make the leap, and opened his own shop – "High Def Productions." (Ex. A, <u>Reid Depo</u>, 210:01 – 210:22).

13

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

51) Mr. Reid's first video contract job for High Def was a White House Productions gig to shoot a school play at Harding Academy, a private school. *Id.* at 102 – 104.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

52) On April 10, 2019, Mr. Reid showed up Harding Academy for the job. *Id*; (Ex. C, Criminal Case Docs, at 1).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

53) The school's security staff took him to a back room, and told him that he was on the sex offender registry and had violated his restrictions. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

54) Mr. Reid left, realized that High Def would never work, and went the next day to get a business license for Reid's Towing – a towing and repossession company. (Ex. A, Reid Depo, at 74, 102, 210; Ex. E, Business License).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

14

55) Giving up on High Def was very painful for Mr. Reid.  *Id.* at 210 – 211.

**RESPONSE:  Undisputed for purposes of this motion.  Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**


56) Unfortunately for Mr. Reid, that same day Harding Academy reported what had happened to MNPD.  (Ex. C, <u>Criminal Case Docs</u>, at 2).

**RESPONSE:  Undisputed for purposes of this motion.  Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**


57) Under Metro policy, MNPD enforced SORA on *ex post facto* offenders like Mr. Reid the same as offenders who committed their offenses after SORA was enacted.  (Ex. F, <u>Metro 30(b)(6) Depo</u>, 52:20 – 53:22; Ex. G, <u>Metro Interrogatory Responses</u>, ¶¶ 12, 18).

**RESPONSE:  Undisputed for purposes of this motion.  Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**


58) Indeed, Metro policy was for its sex offender detectives to file a warrant for violations by any sex offender – including *ex post facto* offenders – whenever the detectives had "investigated and confirmed" a registry violation.  (Ex. F, <u>Metro 30(b)(6) Depo</u>, 52:20 – 53:22, 82 – 83).

**RESPONSE:  Undisputed for purposes of this motion.  Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

59) Consequently, MNPD's SORA detectives worked up the case, drafted a warrant affidavit, and filed a Class E felony charge against Reid for violating SORA. (Ex. C, Criminal Case Docs, at 1; Ex. H, Elliot Depo, 98, 104 – 107).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

60) The only violation alleged was Mr. Reid's visit to Harding Academy, for a video production job on behalf of White House Productions. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

61) The fact that Mr. Reid's original offense had been against an adult, not a child, was not a factor in the decision to file the charge. (Ex. H, Elliot Depo, 98, 104 – 107).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

62) About a week later, Mr. Reid went to MNPD to report his new towing and repossession company. (Ex. A, Reid Depo, 102 – 104).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

63) When he got to MNPD, MNPD arrested him on the outstanding warrant. *Id.* Mr. Reid posted bond to get out of jail. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

64) The arrest quickly hit the news, in which Mr. Reid was described as a "Violent Sex Offender" who should never be permitted around children.[1]

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

65) The owner of White House Productions, a close friend of Reid's named Jim Hunter who had considered Mr. Reid his "go to" up until this point, suffered a serious business setback and public humiliation as he struggled to contain the damage from the scandal. *Id.* at 35 – 36, 158 – 160, 211.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

66) Mr. Reid's relationship with Mr. Hunter was forever changed by the arrest and negative publicity. *Id.* at 35, 211.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

67) Mr. Reid hired a lawyer, fought the criminal charge, and ultimately got the State to drop the prosecution. *Id.*; (Ex. C, <u>Criminal Case Docs</u>, at 3).

---

[1] https://www.wkrn.com/news/crime-tracker/police-violent-sex-offender-attempts-to-enter-nashville-private-school/.

**RESPONSE:  Undisputed for purposes of this motion.  Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**


68) However, the arrest and media coverage had already branded Mr. Reid for life.[2]

**RESPONSE:  Undisputed for purposes of this motion.  Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**


69) Mr. Reid threw himself into Reid's Towing.  (Ex. A, Reid Depo, at 54 – 68).

**RESPONSE:  Undisputed for purposes of this motion.  Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**


70) While he has been able to make a reasonable living with the business, repossessing cars because the owners cannot pay their debts is stressful, joyless, and dangerous work.  *Id.*

**RESPONSE:  Undisputed for purposes of this motion.  Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**


71) Mr. Reid has been shot at "many times" by people whose vehicles he repossessed, and has two bullet holes in his newest truck.  *Id.* at 62 – 64.

**RESPONSE:  Undisputed for purposes of this motion.  Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

---

[2] https://www.wkrn.com/news/crime-tracker/police-violent-sex-offender-attempts-to-enter-nashville-private-school/.

72) Mr. Reid has experienced many other risks and conflicts doing repo work. (*E.g.* Ex. I, <u>MNPD Reports</u>).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

73) Mr. Reid's daughter always wants to be with him, and wants to go to work with him. (Ex. A, <u>Reid Depo</u>, at 21).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

74) But with one out of ten repossession subjects threatening Mr. Reid with violence, it is too dangerous to bring her. *Id.* at 212 – 213.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

75) For over twenty years, Mr. Reid had attended Sunday services at Mt. Zion as well as weekly Wednesday Bible study sessions. *Id.* at 40:14 – 40:18, 175:25 – 176:03.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

76) Mr. Reid's family, especially his daughter, were very involved with the church. *Id.* at 40 – 45, 160.

19

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

77) As video productions director, Mr. Reid had the trust of his camera operator staff as well as much of the congregation. *Id.* at 160 – 176.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

78) Regardless, once the news of the 2019 arrest hit Mt. Zion expelled Mr. Reid. *Id.* at 40 – 45, 171 – 174.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

79) When he came back once after the expulsion to see his daughter serve as a flag girl, he was ordered to leave. *Id.* at 42 – 45.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

80) After that, Mr. Reid found a new church and never returned. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

81) There is no evidence tending to show that Tennessee's Sex Offender Registration and Monitoring Act ("SORA") generally reduces the incidence of criminal offenses. (Ex. J,

Lee Interrogatory Responses, ¶ 1; Ex. K, Rausch Interrogatory Responses, ¶ 1; Ex. G,

Metro Interrogatory Responses, ¶ 1).

**RESPONSE: Undisputed for purposes of this motion. Defendants state, however, that they**

**did provide supplemental discovery responses on January 28, 2022, responsive to Plaintiff's**

**corresponding discovery requests that addresses the reduction of the incidence of criminal**

**offenses. D.E. 62-12.**

82) There is no evidence to show any other societal benefits of SORA. (Ex. J, Lee
Interrogatory Responses, ¶ 2; Ex. K, Rausch Interrogatory Responses, ¶ 2; Ex. G, Metro
Interrogatory Responses, ¶ 2).

**RESPONSE: Undisputed for purposes of this motion. Defendants state, however, that they**

**did provide supplemental discovery responses on January 28, 2022, responsive to Plaintiff's**

**corresponding discovery requests that addresses other societal benefits of SORA. D.E. 62-**

**12.**

83) There is no evidence indicating that the legislature considered any evidence in enacting
any aspect of SORA. (Ex. J, Lee Interrogatory Responses, ¶ 5; Ex. K, Rausch Interrogatory
Responses, ¶ 5; Ex. G, Metro Interrogatory Responses, ¶ 5).

**RESPONSE: Undisputed for purposes of this motion. In addition, pursuant to LR56.01(b),**

**this is a legal allegation, not a fact. Also, pursuant to LR56.01(c), the State Defendants assert**

**this fact is not a material fact.**

21

84) There is no evidence tending to show that failure to enforce SORA on Plaintiff will increase the likelihood of Plaintiff committing future offenses. (Ex. J, <u>Lee Interrogatory Responses</u>, ¶ 6; Ex. K, <u>Rausch Interrogatory Responses</u>, ¶ 6; Ex. G, <u>Metro Interrogatory Responses</u>, ¶ 6).

**RESPONSE: Undisputed for purposes of this motion. In addition, pursuant to LR56.01(b), this is a legal allegation, not a fact. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

85) There are no ways in which Tennessee has narrowed SORA in order to avoid infringing the Constitutional right against *ex post facto* punishment. (Ex. J, <u>Lee Interrogatory Responses</u>, ¶ 8; Ex. K, <u>Rausch Interrogatory Responses</u>, ¶ 8; Ex. G, <u>Metro Interrogatory Responses</u>, ¶ 8).

**RESPONSE: Undisputed for purposes of this motion. In addition, pursuant to LR56.01(b), this is a legal allegation, not a fact. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

86) Defendants have no justifications other than the text of the SORA statute for enforcing SORA on Plaintiff notwithstanding his Constitutional right against *ex post facto* punishment. (Ex. J, <u>Lee Interrogatory Responses</u>, ¶ 9; Ex. K, <u>Rausch Interrogatory Responses</u>, ¶ 9; Ex. G, <u>Metro Interrogatory Responses</u>, ¶ 9).

**RESPONSE: Undisputed for purposes of this motion. In addition, pursuant to LR56.01(b), this is a legal allegation, not a fact. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact.**

87) Metro has maintained and funded a dedicated SORA-enforcement unit for over a decade, staffed by two full-time SORA detectives who are supported by an administrative assistant. (Ex. F, <u>Metro 30(b)(6) Depo</u>, 40 – 42; Ex. H, <u>Elliot Depo</u>, 7 – 11).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

88) Since at least 2018, the SORA detectives have been organized into a formal "Sex Offender Registry Unit." (Ex. M, <u>2018 MNPD Manual Excerpt</u>).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

89) Prior to that, the SORA detectives were part of MNPD's Sex Crimes unit. (Ex. N, <u>2014 MNPD Manual Excerpt</u>).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

23

90) Regardless, functionally speaking the SORA detectives have been doing the same dedicated SORA enforcement duty for years. (Ex. F, <u>Metro 30(b)(6) Depo</u>, 40 – 42; Ex. H, <u>Elliot Depo</u>, 7 – 11).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

91) Under Metro policy, the job of these detectives is to register sex offenders, ensure offender compliance with SORA, and arrest and prosecute SORA violators. (Ex. F, <u>Metro 30(b)(6) Depo</u>, 24).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

92) Under Metro policy, the SORA detectives must enforce SORA on all sex offenders defined as such under Tennessee law, including *ex post facto* offenders like Mr. Reid. (Ex. G, <u>Metro Interrogatory Responses</u>, ¶¶ 12, 18; Ex F, <u>Metro 30(b)(6) Depo</u>, 52 – 53; Ex. O, <u>Sexton Depo</u>, 60:21 – 63:04).[3]

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

---

[3] Metro's designated 30(b)(6) representative was MNPD Inspector Harmon Hunsicker, who leads the bureau to which MNPD's Sex Offender Unit is assigned. (Ex. E, <u>Metro 30(b)(6) Depo</u>, 7 – 11). Surprisingly, Inspector Hunsicker was completely unaware until his August 12, 2021 deposition that on August 5, 2020 this Court had enjoined SORA enforcement against Mr. Reid on *ex post facto* grounds. *Id*. at 18 – 21.

93) Metro policy requires its SORA detectives to proactively conduct "compliance checks," investigate possible violations, and arrest and prosecute SORA violators – regardless of the offender's *ex post facto* status. (Ex. F, <u>Metro 30(b)(6) Depo</u>, 24, 52 – 53; Ex. G, <u>Metro Responses</u>, ¶¶ 12, 18; Ex. H, <u>Elliot Depo</u>, 61:09 – 61:16 (Metro required its SORA detectives to do home verifications/compliance checks); Ex. O, <u>Sexton Depo</u>, 44:15 – 45:03).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

94) Metro also requires the SORA detectives to log their daily activities, tracking the following categories:

- Offenders Registered;

- Juvenile Offenders Registered;

- SOR Investigations (Tips, Complaints, Etc.);

- Patrol Requests/ Phone Calls;

- Warrants Obtained;

- Warrants Served;

- Warrants Attempted;

- Persons Arrested;

- Home Verification;

- Case Prep Notices Prepared;

25

- Hours in Court;

- Days Worked

(Ex. N, <u>SOR Data Sheets</u>).[4]

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

95) In 2019, the year MNPD arrested and charged Mr. Reid for going to the school on a video production job, MNPD's SORA detectives conducted 2,540 SORA investigations, 669 Home Verifications, and fielded 1,510 Patrol Requests. *Id.* They obtained 333 warrants, attempted service of 535 warrants, served 147 warrants, and arrested 94 people. *Id.* They prepared 21 Case Prep notices, and spent 331 hours in court prosecuting alleged SORA violations. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

96) MNPD's practice on home verifications, also referred to as "compliance checks," is to attempt to verify every registered offender's address at least once per year. (Ex. H, <u>Elliot Depo</u>, 55:11 – 56:14).

---

[4] Exhibit K is an excerpt of the SORA data sheets provided by Metro in discovery. The exhibit reflects the annual data totals for each of the years 2019 – 2011, beginning with 2019 and ending with 2011. Metro also provided the weekly data sheets for each week during each of the years in question, but those are not filed here.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

97) To conduct a compliance check, the SORA detectives make a surprise visit to the offender's home, sometimes accompanied by patrol officers. (Ex. H, <u>Elliot Depo</u>, 48:20 – 49:15, 108:21 – 110:03; Ex. O, <u>Sexton Depo</u>, 34:02 – 34:22, 79:15 – 79:21).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

98) After showing up unannounced, the detectives investigate for possible SORA violations – questioning the offender, talking to family members, and sometimes seeking consent to search the home.   (Ex. A, <u>Reid Depo</u>, 81:12 – 86:06).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

99) If the offender is not home for the verification check, the detectives often checked records to see if they could find a witness to interview who might have information about the offender's whereabouts. (Ex. H, <u>Elliot Depo</u>, 97:18 – 97:25).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

100) While these compliance checks are sometimes triggered by third-party tips, they are often just *sua sponte* fishing expeditions. (Ex. O, <u>Sexton Depo</u>, 34:02 – 34:22).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

101) In the past, MNPD has had its SORA detectives organize large-scale "Compliance Operations," in which the detectives recruit help from Sex Crimes and/or Patrol, and possibly other agencies such as the U.S. Marshals service, and systematically check every offender living in a given precinct. (Ex. O, <u>Sexton Depo</u>, 79:15 – 91:02).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

102) These operations commonly lasted two full days, even with the assistance of other Sex Crimes detectives, Patrol, and/or the US Marshals Service. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

103) MNPD's policy on arrest and prosecution for SORA violations is simple – SORA detectives are to arrest and prosecute sex offenders whenever the detective has

"investigated and confirmed" a registry violation. (Ex. F, Metro 30(b)(6) Depo, 52:20 –
53:22, 82 – 83).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the
State Defendants assert this fact is not a material fact with respect to the claim against the
State Defendants.**

104)     The SORA detectives' job is to ensure offender compliance and "catch violators"
– moreover, failing to do so "would not be good for [the detectives'] career[s]." *Id.* at
24:08 – 25:09.

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the
State Defendants assert this fact is not a material fact with respect to the claim against the
State Defendants.**


105)     Metro publicly celebrates the SORA detectives' proactive enforcement activities,
and has particularly highlighted the volume of arrests and home verification checks. (Ex.
Q, Newsline).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the
State Defendants assert this fact is not a material fact with respect to the claim against the
State Defendants.**


106)     Moreover, Metro requires the SORA detectives to participate in the prosecution of
charged SORA violators. (Ex. H, Elliot Depo, 70:02 – 70:14; Ex. O, Sexton Depo, 54:25
– 58:06; Ex. R, Elliot Personnel File Excerpt; Ex. S, Sexton Personnel File Excerpt).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

107)     Thus, part of the SORA detectives' job is to consult with the prosecuting attorneys, provide background information, and give recommendations as to appropriate punishment. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

108)     Metro's SORA detectives have long cooperated with the TBI to proactively enforce SORA, and at various points have cooperated with other state and federal agencies. (Ex. O, Sexton Depo, 65:04 – 66:18; Ex. H, Elliot Depo, 18:03 – 23:06, 67:03 – 70:01; Ex. R, Elliot Personnel Excerpt, at 4 – 5; Ex S, Sexton Personnel Excerpt, at 4).

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

109)     These agencies have included the Tennessee Department of Corrections, the U.S. Marshals, and Immigration and Customs Enforcement. *Id.*

**RESPONSE: Undisputed for purposes of this motion. Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

110)    Indeed, Metro has publicly touted its cooperation with TDOC's "Operation Blackout," a SORA operation designed to keep sex offenders from leaving their homes on Halloween.  (Ex. T, <u>Press Release</u>).[5]

**RESPONSE: Undisputed for purposes of this motion.  Also, pursuant to LR56.01(c), the State Defendants assert this fact is not a material fact with respect to the claim against the State Defendants.**

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

s/ Rob Mitchell
ROB MITCHELL (32266)
Senior Assistant Attorney General

s/ Miranda Jones
MIRANDA JONES (36070)
Assistant Attorney General

Law Enforcement and
Special Prosecutions
Division

---

[5] While MNPD's sex offender detectives testified that they declined to participate in Blackout, Detective Elliot testified that other MNPD officers had participated, and that the sergeant over the sex offender detectives had asked the SORA detectives to participate as well.  (Ex. G, <u>Elliot Depo</u>, 23 – 26).

31

Office of the Tennessee
Attorney General and
Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Off. (615) 532-6023
Fax (615) 532-4892
robert.mitchell@ag.tn.gov
miranda.jones@ag.tn.gov
*Counsel for Defendants Lee and Rausch*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been filed and served by the Court's electronic filing system upon:

Kyle Mothershead
2901 Dobbs Ave.
Nashville, TN 37211
T: (615) 982-8002
F: (615) 229-6387
kyle@relentlesslaw.com
*Counsel for Plaintiff*

J. Brooks Fox
Michael R. Dohn
Assistant Metropolitan Attorneys
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
brook.fox@nashville.gov
michael.dohn@nashville.gov
*Counsel for Metropolitan Government of*
*Nashville/Davidson County, Tennessee*

On this the 25th day of February, 2022.

s/ Rob Mitchell
ROB MITCHELL
